[Cite as *Estate of Rismiller*, 2024-Ohio-1704.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
DARKE COUNTY

| | | |
|---|---|---|
| ESTATE OF THEORA RISMILLER, | : | |
| aka THEORA M. RISMILLER, | : | |
| aka THEORA MAE RISMILLER | : | C.A. No. 2023-CA-29 |
| | : | |
| | : | Trial Court Case No. 19-1-202 |
| | : | |
| | : | (Appeal from Common Pleas Court-Probate Division) |
| | : | |
| | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on May 3, 2024

. . . . . . . . . . .

DOUG RISMILLER, Pro Se Appellant

CAROLINE R. SCHMIDT, Attorney for Appellee

. . . . . . . . . . . .

EPLEY, P.J.

{¶ 1} Doug Rismiller, pro se, appeals from a judgment of the Darke County Court of Common Pleas, Probate Division, which overruled his exceptions and approved the co-executors' final and distributive account of his mother's estate. For the following reasons, the probate court's judgment will be affirmed.

**I. Facts and Procedural History**

**{¶ 2}** Theora Rismiller, Doug's mother, died on June 7, 2019, and her will was admitted to probate on July 18, 2019. The beneficiaries under her will were her three living children – Doug, Ronald Rismiller, and Cinda Rismiller – and two adult granddaughters, Krista Fourman and Kimberlee Freeman, the children of her deceased daughter, Sharon. Ronald and Cinda were named as co-executors of the estate.

**{¶ 3}** In October 2019, Ronald and Cinda filed an inventory and appraisal, which stated that the estate consisted of tangible personal property (a vehicle) totaling $1,500; intangible personal property totaling $60,227.42; and real property valued at $1,980,822. The inventory did not address Theora's personal property contained within her home. Doug purchased Theora's vehicle for $1,000.

**{¶ 4}** Ronald and Cinda filed partial accounts in February 2020, March 2021, and March 2022, each of which were approved by the probate court. During this time, some of the real property was sold. Doug did not object to any of these filings.

**{¶ 5}** On March 23, 2023, Ronald and Cinda filed a final and distributive account for the period of March 4, 2022 to December 2022. The report indicated, in part, that certain real property had been transferred to Doug and other real property had been transferred to Ronald. Of relevance here, Doug received the house, land, and buildings located at 1273 Elijah-York Road in Rossburg. The final account valued this residential property at $150,000.

**{¶ 6}** On May 26, 2023, Doug filed exceptions to the final and distributive account, contesting the appraisal of the house, land, and buildings and the distribution of the personal property from Theora's home. The probate court conducted a hearing on

August 29, 2023, during which Cinda, Ronald, and Doug testified. On September 20, 2023, the probate court overruled Doug's exceptions and accepted the final and distributive accounting as presented.

{¶ 7} Doug requested a new hearing or a new trial and separately indicated his desire to appeal the probate court's ruling, although the probate court did not consider that document to be a properly filed notice of appeal. On October 24, 2023, the probate court overruled Doug's motion for a new trial. Doug then appealed the probate court's September 20, 2023 decision.

## II. Analysis

{¶ 8} Doug does not set forth any assignments of error as required by App.R. 16(A)(3). However, we infer that he is claiming that the probate court erred in overruling his exceptions and adopting the co-executors' final and distributive account.

{¶ 9} R.C. 2109.301(B)(1) requires the filing of a final and distributive account. The probate court must set a hearing on the account. R.C. 2109.32(A). At least five days before the hearing occurs, any person interested in the estate may file exceptions to the account. R.C. 2109.33. If, at the hearing, the court finds that the fiduciary has fully and lawfully administered the estate and has distributed the estate's assets in accordance with the law or the governing document, as shown in the account, the court must order the account approved and settled and may order the fiduciary discharged. R.C. 2109.32(A). The probate court's order upon the settlement of a fiduciary's account has the effect of a judgment. R.C. 2109.35.

{¶ 10} In his exceptions to the final and distributive account, Doug contested the

valuation of the residential real property that he received; he asserted at the August 29, 2023 hearing that the valuation of the residential property was improperly increased by approximately $20,000. Doug further challenged the distribution of Theora's household items.

{¶ 11} The probate court concluded that neither of Doug's exceptions had merit. It found that Doug had consented to the valuation of the residential property and could not later object in the final account. As to the distribution of the personal property inside Theora's home, the court found that soon after Theora passed away, Doug went to the home and something happened that caused co-executors' counsel to instruct him to stay away from the property. As time went on, Doug raised the issue of dividing the personal property in the house. The co-executors then developed a process for the division of that property, but Doug opted not to express his wishes or to appear on the day the property was to be divided. The co-executors proceeded with the plan but left many items in the residence as Doug's share of the personal property. The court continued:

> The Court would not have chosen the co-executors' specific plan for division of the personal property. It is obvious the plan was written by one or both of the co-executors. It is not a legal document. And the execution of the plan has created the opportunity for Doug Rismiller to now object.

> At the same time, however, the co-executors' plan included a lengthy list of property, along with a straightforward process, and notice to all parties. Doug Rismiller participated in the process up to a point. All of the beneficiaries had a meeting on September 25, 2022, but the testimony

established there were multiple meetings during August and September. Doug Rismiller walked through the residence. These actions would have given the co-executors the impression Doug Rismiller was a willing participant in the process.

Doug Rismiller has provided no explanation as to why he did not submit a list to the co-executors. There has been no explanation as to why he did not attend the day of the actual distribution. Beyond that, Doug Rismiller did not object to the Court at any point about the list provided by the co-executors, the process, or anything until months after the process was already complete.

The Court finds that the co-executors reasonably relied on Doug Rismiller's actions in proceeding with the personal property distribution as planned and announced. The Court finds that the co-executors have fully and lawfully administered the estate. The final and distributive account is approved as presented.

Judgment (Sept. 20, 2023).

{¶ 12} We find no error in the probate court's ruling. Beginning with the value of the residential property, the record reflects that an October 2019 appraisal valued the one-acre home site plus improvements at $128,770. Ronald testified that the county later required him to upgrade the well and the sewage system before selling the property. He indicated that, after the work was completed, another appraisal was performed which concluded that the value was $150,000. The property was valued at $150,000 when it

was transferred to Doug in December 2022.

{¶ 13} Cinda testified that on March 28, 2023, the co-executors filed, along with the final and distributive account, a document titled "consent to distribution of real property," which identified the real property that would be transferred to Doug and Ronald. Cinda identified the document at the hearing and testified that it represented the agreement among all the beneficiaries as to the value and distribution of the real property owned by Theora. It specifically stated that the residential property that Doug would receive was valued at $150,000. All the beneficiaries, including Doug, signed the document. The probate court thus reasonably concluded that Doug had consented to the real property's valuation and waived any objection to it.

{¶ 14} As for Theora's personal property, Cinda and Ronald each testified that Cinda was the co-executor primarily responsible for distribution of Theora's household goods. Cinda testified that, after speaking with one of their attorneys, they decided to create a list of the household goods, separate them into groups, and then have the beneficiaries identify which groups of items they wanted; Cinda, Ronald, and Doug would have the opportunity to select four groups each, and their nieces (the daughters of the deceased sibling) would have the opportunity to select two groups each. They also created a mechanism for resolving issues if more than one person wanted the same group. The beneficiaries were provided an opportunity to walk through the home on September 25, 2022. Cinda had asked everyone to provide their selections by September 26, 2022, the next day.

{¶ 15} Doug testified that the creation of an inventory was his idea, and it is

undisputed that he walked through the home with his nieces, although he testified that he only had 20 minutes to do so. Cinda testified that she received a list of selected items from the other beneficiaries, but Doug did not respond. Doug agreed, both at the hearing and in his appellate brief, that he did not provide a list of what he wanted to Cinda. Doug avoided communicating with Cinda and communicated exclusively with Ronald about the estate. However, Doug did not provide a list of desired household goods to Ronald either.

**{¶ 16}** When asked on cross-examination about his not providing a list or asking for specific items, Doug testified that he "would like to look at everything" and that he could not provide a list if he did not know what was in there. Doug acknowledged that his mother had lived in the home for his entire life and that he had been in the home before. Doug testified on rebuttal, though, that he had not looked through his mother's belongings to learn what she had and that he did not know everything that was in the house.

**{¶ 17}** Ronald agreed with Doug that the beneficiaries went into the residence in late December 2022 and removed items from the home, and that Doug had not been notified. Doug describes this event as a "free for all," but it appears the purpose was to remove items that had been apportioned to them, and Doug had not indicated that he wanted any particular items. Nevertheless, several items were left at the house for Doug, including kitchen appliances, tables and chairs, living room furniture, a television, a washer and dryer, two bedroom suites, a riding lawnmower, and personal photographs and mementos.

{¶ 18} At the hearing, Doug raised that numerous items had been removed from the house and were not included in the inventory that Cinda and Ronald had prepared. Cinda indicated that she disposed of a sewing machine and a jewelry box that were in poor condition and that a niece took a desk that she wanted for her daughter. In addition, the nieces took some of Theora's jewelry, which was not valuable. Ronald also stated that items that had been gifted to Theora were returned to the giver.

{¶ 19} On this record, the probate court reasonably concluded that the co-executors had relied on Doug's actions in proceeding with the personal property distribution as planned and announced. The court further reasonably concluded that the co-executors fully and lawfully administered the estate.

{¶ 20} In his appellate brief, Doug asserts that, for a three-year period, Cinda removed "dozens and dozens of items, hundreds of items" from Theora's home and either kept them for her own benefit or distributed them to others for the pleasure of receiving attention. He contended that she did so to keep family members whom she despised from getting their fair share. He further claimed that Ronald was aware of Cinda's behavior and allowed it to happen. Although Doug testified that numerous items were removed from the house before the inventory was prepared, there was no testimony regarding Cinda's motivations. Accordingly, we cannot consider Doug's allegations in resolving this appeal. *See, e.g., Bank of Am., N.A. v. Shailer*, 2d Dist. Montgomery No. 29036, 2021-Ohio-3939, ¶ 14 (in reviewing the trial court's judgment, we are limited to the record before the probate court).

{¶ 21} Finally, Doug raises that the estate's attorney had a possible conflict of

interest, which allegedly affected the administration of the estate and was not disclosed to the probate court. This issue was not raised in probate court, and we cannot consider it for the first time on appeal. *E.g., State v. Wintermeyer*, 158 Ohio St.3d 513, 2019-Ohio-5156, 145 N.E.3d 278, ¶ 10 ("A first principle of appellate jurisdiction is that a party ordinarily may not present an argument on appeal that it failed to raise below."); *Budz v. Somerfield*, 2d Dist. Montgomery No. 29550, 2023-Ohio-155, ¶ 30 ("It is well settled that arguments raised for the first time on appeal will not be considered by an appellate court.").

### III. Conclusion

**{¶ 22}** The probate court's judgment will be affirmed.

. . . . . . . . . . . . .

LEWIS, J. and HUFFMAN, J., concur.